## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,                          )
425 Third Street S.W., Suite 800               )
Washington, DC 20024,                          )
                                               )
                      Plaintiff,               )
                                               )
v.                                             )          Civil Action No.
                                               )
U.S. DEPARTMENT OF JUSTICE,                    )
950 Pennsylvania Avenue, N.W.                  )
Washington, D.C. 20530,                        )
                                               )
and                                            )
                                               )
CENTRAL INTELLIGENCE AGENCY,                   )
Litigation Division, Office of General Counsel )
Washington, DC 20505,                          )
                                               )
and                                            )
                                               )
U.S. DEPARTMENT OF DEFENSE,                    )
General Counsel                                )
1600 Defense Pentagon                          )
Washington, DC 20301,                          )
                                               )
and                                            )
                                               )
OFFICE OF THE DIRECTOR OF                      )
NATIONAL INTELLIGENCE,                         )
Office of General Counsel                      )
Washington, DC 20511,                          )
                                               )
and                                            )
                                               )
U.S. DEPARTMENT OF                             )
HOMELAND SECURITY,                             )
Office of General Counsel                      )
245 Murray Lane, SW                            )
Mailstop 0485                                  )
Washington, DC 20528-0485,                     )
                                               )
                      Defendants.              )
_____)

## COMPLAINT

Plaintiff Judicial Watch, Inc. brings this action against Defendants U.S. Department of Justice, Central Intelligence Agency, U.S. Department of Defense, Office of the Director of National Intelligence, and U.S. Department of Homeland Security to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  As grounds therefor, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

### PARTIES

3.      Plaintiff Judicial Watch, Inc. ("Plaintiff") is a not-for-profit, educational organization incorporated under the laws of the District of Columbia and headquartered at 425 Third Street SW, Suite 800, Washington, DC 20024.  Plaintiff seeks to promote transparency, integrity, and accountability in government and fidelity to the rule of law.  As part of its mission, Plaintiff regularly requests records from federal agencies pursuant to FOIA.  Plaintiff analyzes the agencies' responses and disseminates both its findings and the requested records to the American public to inform them about "what their government is up to."

4.      Defendant U.S. Department of Justice ("DOJ") is an agency of the U.S. Government and is headquartered at 950 Pennsylvania Avenue, N.W., Washington D.C. 20530. Defendant has possession, custody, and control of the records to which Plaintiff seeks access.

2

5.      Defendant Central Intelligence Agency ("CIA") is an agency of the United States and is headquartered at 1000 Colonial Farm Road, Langley, VA 22101.  Defendant has possession, custody, and control of records to which Plaintiff seeks access.

6.      Defendant U.S. Department of Defense ("DOD") is an agency of the U.S. Government headquartered at 1400 Defense Pentagon, Washington, DC 20301.  Defendant has possession, custody, and control of records to which Plaintiff seeks access.

7.      Defendant Office of the Director of National Intelligence ("ODNI") is an agency of the U.S. Government and is headquartered at 1500 Tysons McLean Drive, McLean, VA 22102.  Defendant has possession, custody, and control of records to which Plaintiff seeks access.

8.      Defendant U.S. Department of Homeland Security ("DHS") is an agency of the U.S. Government and is headquartered at 2707 Martin Luther King Jr. Ave S.E., Washington, DC 20528.  Defendant has possession, custody, and control of public records to which Plaintiff seeks access.

## STATEMENT OF FACTS

*A.  Federal Bureau of Investigation Request*

9.      On February 27, 2026, Plaintiff submitted a FOIA request to the Federal Bureau of Investigation ("FBI"), a component of Defendant DOJ, seeking access to the following public records:

1. **Records Indexed to Acknowledged Investigative Programs and Units**
All records created, received, or maintained by the FBI's Counterintelligence Division, the FBI's Weapons of Mass Destruction Directorate, or any FBI field office — including but not limited to the Washington Field Office — in connection with the investigation of Anomalous Health Incidents (AHIs), indexed or filed under any of the following known or likely file classifications: (Espionage); (Sabotage); (Domestic Security); (Foreign Counterintelligence); or any successor or

analogous classification applied to AHI-related investigative activity. This item includes all records associated with any dedicated AHI investigative squad, unit, or task force stood up within or coordinated by the FBI, including any unit established pursuant to congressional direction or interagency agreement. The FBI is requested to search not only its Central Records System subject index but also its Electronic Case File (ECF) system using the following terms as search strings: "Anomalous Health Incident," "AHI," "Havana Syndrome," "directed energy," and "unexplained health incident."

2. **Records Indexed to Named and Publicly Acknowledged Investigative Activity**
   The FBI has publicly acknowledged, including in congressional testimony and press statements, that it conducted investigative activity related to AHIs. Accordingly, all records — including investigative case files, EC (electronic communication) series documents, LHMs (Letterhead Memoranda), FD-302 interview reports, and internal briefing materials — associated with that acknowledged investigative activity are responsive to this request. To the extent the FBI has assigned a specific case classification number, FBIHQ control number, or field office case number to AHI-related investigations, all records indexed to such numbers are expressly requested. The FBI may not satisfy this request by returning a "no records" response premised solely on the absence of a subject-name hit in the Central Records System where the existence of responsive programmatic or case-file records has been publicly confirmed.

3. **Records Reflecting Coordination with Other Federal Agencies**
   All FBI records reflecting coordination, information sharing, or joint investigative activity with the CIA, ODNI, NSC, Secret Service, DHS, or Department of State concerning AHIs, including: interagency memoranda of understanding or coordination agreements; EC traffic and LHMs reflecting information passed to or received from other agencies; joint task force records; and any FBI records reflecting the results of or responses to requests for assistance from other IC elements on AHI-related matters. This item includes records of FBI participation in any interagency AHI working group or task force, however named or constituted.

4. **Records Concerning Domestic Incidents**
   All FBI records — including investigative case files, FD-302s, EC traffic, and field office communications — reflecting FBI awareness of, response to, or investigation of reported AHI incidents occurring within the United States, including incidents reported in or near: Washington, D.C.; Northern Virginia; and any location proximate to a federal facility, diplomatic installation, or U.S. government building. This item includes records reflecting any FBI field office's receipt of, referral of, or response to AHI incident reports from affected federal personnel. The FBI is specifically

4

requested to search Washington Field Office records in addition to FBIHQ records, as domestic incident response would likely generate field-level files not reflected in a headquarters-only search.

5. **Records Reflecting Investigative Conclusions, Declinations, or Closures**
All records reflecting any FBI determination to: open or decline to open a full investigation into AHIs or specific AHI incidents; close, suspend, or downgrade any AHI-related investigation; refer AHI-related matters to another agency; or characterize AHI reports as outside FBI investigative jurisdiction. This item includes any prosecutorial referral memoranda, declination memoranda, case-closing ECs, and any records reflecting FBI's communication to affected personnel or other agencies of its investigative conclusions or limitations. Records reflecting any internal FBI debate over investigative jurisdiction, resource allocation, or evidentiary thresholds applied to AHI cases are expressly included.

6. **HAVANA Act Implementation Records**
All FBI records generated in connection with the FBI's obligations under or response to the HAVANA Act of 2021 (Public Law 117-46), including: internal policy guidance issued to FBI components regarding AHI reporting, benefit eligibility, or personnel support; records reflecting FBI's identification or referral of qualifying personnel; and any interagency coordination records generated in connection with HAVANA Act implementation. The FBI is requested to search both FBIHQ and field office records for responsive materials, as implementation-level records are likely distributed across field components.

The timeframe of the request was identified as January 1, 2016 to the present. The request was submitted via the FBI's online FOIA portal and, accordingly, it was received the same day it was sent.

10. By letter dated March 5, 2026, the FBI acknowledged receipt of Plaintiff's request and assigned it FOIPA Request No. 1724871-000.

11. Plaintiff has received no further communication from the FBI regarding this request.

### B. *Central Intelligence Agency Request*

12. On February 27, 2026, Plaintiff submitted a FOIA request to the Central Intelligence Agency, seeking access to the following public records:

5

1. **Technical and Scientific Analysis Records**
   All records reflecting CIA analysis, assessment, or investigation of the physical mechanisms, technical characteristics, or causal agents proposed or evaluated in connection with Anomalous Health Incidents (AHIs), including but not limited to: directional energy, pulsed radiofrequency energy, ultrasonic or infrasonic mechanisms, or any other technical hypothesis evaluated by CIA or by any CIA-tasked external scientific or technical advisory body; engineering or physics assessments of proposed delivery mechanisms or devices; records produced by or provided to the CIA's Medical and Psychological Analysis Center (MPAC) or any successor or analogous component; and any CIA-commissioned or CIA-received external scientific studies, contractor analyses, or technical white papers bearing on AHI causation. Where CIA has received technical assessments from other IC elements, national laboratories, or outside experts, all such records received, reviewed, or relied upon by CIA are responsive to this item.

2. **Case Records and Incident Documentation**
   All records — including cable traffic, situation reports, after-action reports, case files, and field communications — reflecting CIA's internal tracking, documentation, or investigation of reported AHI incidents affecting CIA personnel, contractors, or assets, including incidents occurring: at CIA headquarters or associated Northern Virginia facilities; at CIA stations or bases overseas; and at any temporary duty location. This item includes records reflecting the total number of CIA-affiliated individuals who reported AHI symptoms, the geographic distribution of reported incidents, and any internal CIA determination regarding the credibility or validity of individual reports. This item does not seek personally identifiable medical records or source-identifying information beyond what is reasonably segregable.

3. **Attribution Analysis and Foreign Threat Assessments**
   All records reflecting CIA analysis or raw intelligence bearing on the question of whether a foreign state actor, non-state actor, or any other identified party was responsible for or capable of causing AHIs, including: finished intelligence products; raw reporting and associated source evaluations; technical capability assessments of foreign directed-energy or related programs; records reflecting CIA's position on attribution relative to the positions of other IC elements; and any records documenting CIA's concurrence, non-concurrence, or qualified dissent with respect to the March 2023 IC assessment's attribution conclusions. This item expressly includes any records reflecting CIA's assessment of Russian, Chinese, or Cuban technical programs relevant to AHI causation, to the extent segregable from properly classified source and method information.

6

4. **Internal Investigation and Accountability Records**
   All records reflecting any CIA internal review, inspector general inquiry, accountability review, or ombudsman proceeding concerning: CIA's handling of AHI reports from affected personnel; the adequacy of medical care, benefits, or support provided to CIA personnel reporting AHI symptoms; any allegation that CIA leadership discouraged, minimized, or impeded reporting of AHI incidents; and any findings, recommendations, or corrective actions resulting from such reviews. This item includes records generated in response to or in connection with the HAVANA Act of 2021 (Public Law 117-46), including CIA's implementation of benefit eligibility determinations and any associated internal guidance or policy issuances.

5. **Interagency Coordination and Congressional Liaison Records**
   All records reflecting CIA participation in any interagency working group, task force, or coordination body addressing AHIs, and all records reflecting CIA's preparation for, participation in, or follow-up to any congressional briefing, hearing, or inquiry concerning AHIs, including: briefing materials prepared for or provided to Congress; talking points, Q&A preparation documents, or after-action reports from congressional engagements; and any CIA records reflecting the substance of congressional questions or concerns raised regarding CIA's handling of AHI analysis, personnel care, or attribution conclusions. Records reflecting disagreements between CIA and congressional oversight bodies on any AHI-related matter are expressly included.

6. **Records Concerning Domestic Incidents**
   All records — including cable traffic, operational reporting, analytical products, and internal communications — referencing reported AHI incidents occurring within the United States, including incidents in or near Washington D.C., Northern Virginia, and any other domestic location. This item includes records reflecting any CIA awareness of, response to, or analytic treatment of domestic AHI reports; any coordination with the FBI, Secret Service, or other domestic agencies regarding domestic incidents; and any CIA determination regarding whether domestic incidents were treated differently in analytic or investigative terms than overseas incidents. This item does not seek information that would identify confidential human sources or reveal lawfully protected operational equities beyond what is reasonably segregable.

The time frame of the request was identified as March 1, 2016 to the present.

7

13.     By letter dated April 23, 2026, the CIA acknowledged receipt of Plaintiff's request on February 27, 2026 and advised Plaintiff that the request had been assigned reference number F-2026-01123.

14.     Plaintiff has received no further communication from the CIA regarding this request.

### C.  Defense Intelligence Agency Request

15.     On February 27, 2026, Plaintiff submitted a FOIA request to the Defense Intelligence Agency ("DIA"), a component of Defendant DOD, seeking access to the following public records:

1. **Records of DIA's Internal AHI Investigation Program**
   All records created, received, or maintained by the Defense Intelligence Agency in connection with its internal investigation of Anomalous Health Incidents (AHIs) affecting DIA personnel, including all records associated with the investigation led by or involving retired Army Lt. Col. Greg Edgreen, who has publicly identified himself as having headed DIA's AHI investigation. This item includes: all records reflecting the scope, mandate, and authority under which DIA's internal AHI investigation was conducted; case files, investigation reports, interim findings, and final conclusions produced by or for that investigation; personnel records reflecting the rank, assignment, and operational profile of DIA officers identified as AHI victims, to the extent segregable from personally identifiable medical information; all records reflecting Edgreen's findings, briefings, and recommendations to DIA leadership; and all records reflecting DIA leadership's response to, acceptance of, rejection of, or suppression of those findings and recommendations. Records reflecting any instruction, guidance, or pressure — formal or informal — to limit, redirect, narrow, or terminate the internal investigation are expressly included.

2. **Records Concerning the Dismissal of DIA Director Lt. Gen. Jeffrey Kruse**
   All records reflecting the circumstances, basis, and process surrounding the dismissal of DIA Director Lt. Gen. Jeffrey Kruse on or about August 22, 2025, including: all records reflecting the specific conduct or decisions by Lt. Gen. Kruse that formed the basis for SecDef Hegseth's "loss of confidence" determination; all records reflecting any finding by the House Permanent Select Committee on Intelligence or its Subcommittee that Lt. Gen. Kruse acted in an "unacceptable manner" toward an AHI victim, as

publicly stated by Subcommittee Chairman Rep. Rick Crawford; all inspector general referrals, accountability review records, or internal DIA review documents relating to Lt. Gen. Kruse's handling of AHI cases or AHI-affected personnel; and all records reflecting DIA's response to congressional inquiries regarding Lt. Gen. Kruse's conduct. This item does not seek records unrelated to AHI matters.

3. **Records Reflecting DIA's Foreign Threat Assessment of Directed-Energy Weapons**
   All DIA finished intelligence products, raw reporting evaluations, technical assessments, and analytic memoranda addressing: the existence, development status, operational capability, and deployment history of foreign directed-energy, pulsed radio-frequency, or novel non-kinetic weapons programs — with particular focus on Russian, Chinese, and Cuban programs; DIA's assessment of GRU Unit 29155's involvement in or association with directed-energy weapons development, including any awards, promotions, or programmatic records attributed to that unit in connection with such weapons, as publicly reported; DIA's assessment of the technical feasibility of a backpack-portable pulsed radio-frequency device capable of causing neurological injury consistent with reported AHI symptoms; and any DIA records reflecting analysis of the device acquired through the HSI undercover operation and subsequently tested by the Department of Defense, including DIA's technical evaluation of that device's provenance, components, and operational characteristics.

4. **Records Reflecting DIA's Participation in IC Assessments and Analytic Coordination**
   All records about DIA's participation in, contribution to, dissent from, or concurrence with any Intelligence Community assessment concerning AHIs, including the March 2023 ICA, the January 2025 updated assessment, and any predecessor or successor analytic products. This item expressly includes: DIA's formal coordination comments, dissent memoranda, and non-concurrence submissions on any IC AHI assessment; records reflecting DIA's analytic position on attribution, technical feasibility, and foreign actor involvement, including any position that diverged from the majority IC view; records reflecting any instruction, pressure, or guidance received by DIA from ODNI, the NIC, or any other IC element regarding DIA's analytic position on AHIs; and records reflecting DIA's response to the House Intelligence Subcommittee's finding that the 2023 ICA "lacked analytic integrity" and was produced in a "highly irregular" manner. Records reflecting any internal DIA debate over whether to concur with or dissent from majority IC assessments on AHIs are expressly included.

5. **Records Concerning AHI Incidents Affecting DIA Personnel**
All records — including incident reports, after-action reports, medical referral records, and field communications — reflecting DIA's documentation of reported AHI incidents involving DIA officers, civilian employees, or contractors, including: records reflecting the total number of DIA-affiliated personnel who reported AHI symptoms; records reflecting the geographic and operational distribution of reported incidents among DIA personnel, including any pattern analysis identifying common assignment profiles, operational focuses, or geographic concentrations; any DIA finding or assessment that targeted personnel were disproportionately drawn from high-performing officers or those with Russia-related assignments or equities, consistent with public testimony by Lt. Col. Edgreen; and records reflecting DIA's referral of AHI-affected personnel for medical evaluation, benefit determination, or HAVANA Act eligibility review. This item does not seek personally identifiable medical records beyond what is reasonably segregable.

6. **Records Reflecting Congressional Oversight and DIA's Response**
All records reflecting DIA's preparation for, participation in, or follow-up to congressional oversight activity concerning AHIs, including: briefing materials, talking points, and read-aheads prepared for or provided to the House Permanent Select Committee on Intelligence, the Senate Select Committee on Intelligence, or any other congressional body; records reflecting DIA's response to the House Intelligence Subcommittee's unclassified report on AHIs, including internal assessments of that report's findings and any DIA rebuttal or concurrence; records reflecting any DIA determination that congressional oversight of DIA's AHI handling was improper, overreaching, or to be resisted; and all records reflecting DIA's response to specific congressional requests for information, documents, or witness testimony on AHI matters. Records reflecting any instruction to limit, delay, or condition DIA's cooperation with congressional oversight on AHIs are expressly included.

7. **HAVANA Act Implementation and Personnel Support Records**
All records reflecting DIA's implementation of or compliance with the HAVANA Act of 2021 (Public Law 117-46), including: internal policy guidance, legal interpretations, and implementing directives issued to DIA components; records reflecting the number of DIA personnel determined eligible or ineligible for HAVANA Act benefits, and the criteria applied to those determinations; records reflecting any DIA finding that its benefit determination process was inadequate, inconsistent, or untimely, including any GAO, IG, or internal review findings to that effect; and all records reflecting coordination between DIA and the Defense Health Agency, the Department of Veterans Affairs, or other agencies on benefit implementation for DIA-affiliated AHI victims.

The time frame of the request was identified as January 1, 2016 to the present.

16.    DIA acknowledged receipt of Plaintiff's request the same day, February 27, 2026, and advised Plaintiff that the request had been assigned case number FOIA-00152-2026.  DIA also informed Plaintiff that it had invoked FOIA's 10-day extension of time provision for "unusual circumstances."

17.    Plaintiff has received no further response from the DIA regarding this request.

*D.  Office of the Director of National Intelligence Request*

18.    On February 27, 2026, Plaintiff submitted a FOIA request to the Office of the Director of National Intelligence ("ODNI"), seeking access to the following public records:

1. **Intelligence Community Assessment Process Records**
   All records reflecting the methodology, analytic standards, coordination process, evidentiary framework, source weighting criteria, and  analytic confidence determinations used in the production of any Intelligence Community assessment concerning Anomalous Health Incidents (AHIs), including but not limited to: Requests for Information (RFIs) and taskings issued to IC elements; analytic standards, confidence-language guidance, and tradecraft criteria applied; coordination comments, dissent memoranda, formal objections, and non-concurrence statements from any IC element; evidence matrices, analytic line-of-inquiry frameworks, and structured analytic technique documentation; internal briefing materials, read-aheads, and back-channel communications describing, challenging, or modifying assessment methodology or conclusions.

2. **Unclassified or Segregable Assessment Materials**
   All unclassified versions, drafts, annexes, appendices, briefing slides, talking points, executive summaries, and dissemination cables of any IC assessment concerning AHIs.

3. **Records Referencing Incidents Within the United States**
   All records — including analytic products, coordination memoranda, tasking cables, situation reports, and working-level communications — referencing reported AHIs occurring within the United States or U.S. homeland, including but not limited to incidents occurring in or near Washington, D.C.; Northern Virginia; and any federal facility or installation. For each such incident referenced, responsive records should reflect, to the extent documented: general location; approximate date or timeframe; IC element(s) tasked or consulted; and the analytic treatment

11

accorded such incidents within IC assessments, including whether such incidents were included in, excluded from, or treated differently than overseas incidents in any IC assessment. This item does not seek personally identifiable medical information or operationally sensitive source and method details beyond what is reasonably segregable.

4. **Interagency Coordination and Working Group Records**
All records reflecting ODNI and NIC participation in any interagency working group, task force, fusion cell, or analytic coordination body — whether formally or informally constituted — addressing AHIs, including: meeting agendas, minutes, and attendee lists; tasking memoranda, action-item trackers, and follow-up correspondence; interagency briefing materials, coordination summaries, and draft or final interagency analytic products; and any records reflecting ODNI's role in directing, coordinating, or adjudicating analytic disagreements among IC elements on the AHI question. This item expressly includes records of ODNI and NIC coordination with the National Counterintelligence and Security Center (NCSC) on AHI-related analysis.

5. **Evidentiary Gaps, Analytic Uncertainty, and Dissenting Analysis**
All records documenting identified intelligence gaps, collection shortfalls, competing hypotheses, alternative causal explanations, or unresolved analytic uncertainties concerning AHIs, including: any Red Team analyses, alternative analysis products, or devil's advocate assessments; formal or informal dissent channel submissions from any IC element regarding AHI-related assessments; records reflecting internal debate over the evidentiary sufficiency of any assessment conclusion; and any post-publication review, reassessment, or internal critique generated following the release of the March 2023 IC assessment, including records responsive to congressional inquiries or public challenges to that assessment's conclusions.

The time frame of the request was identified as January 1, 2016 to the present.

19.    By letter dated March 20, 2026, ODNI acknowledged receipt of Plaintiff's request on February 27, 2026 and advised Plaintiff that the request had been assigned tracking number DF-2026-00310.

20.    Plaintiff has received no further communication from the ODNI regarding this request.

*E.  U.S. Immigration and Customs Enforcement Request*

21.     On February 26, 2026, Plaintiff submitted a FOIA request to the U.S. Immigration

and Customs Enforcement ("ICE"), a component of Defendant DHS, via its online portal,

seeking access to the following public records:

> Records and communications about a directed-energy or pulsed-energy
> device — variously described in major cable news reporting in late 2024
> as a pulsed radiofrequency emitter or pulsed electromagnetic energy
> device — that was acquired by HSI in or around late 2024 using
> Department of Defense funds, and that has been studied in connection
> with anomalous health incidents (AHIs), commonly known as "Havana
> Syndrome." To the extent HSI possesses records pertaining to this device
> under any internal project name, procurement identifier, contract number,
> or equipment designation, those records are within the scope of this
> request.

**I.   Date Range**
Please provide records from January 1, 2024, through the date this request is
processed.

**II.  Offices to Be Searched**
Please search records held by, but not necessarily limited to, the following
components:
• HSI Headquarters, including the Office of the Executive Associate Director
• HSI's National Security Investigations Division
• HSI's Office of Acquisition Management or equivalent procurement office
• ICE Office of the Director
• DHS Office of the Under Secretary for Intelligence and Analysis, to the extent
records were shared with HSI
• Any joint task force, interagency working group, or liaison office through which
HSI coordinated with the Department of Defense regarding this device

**III.  Categories of Records Requested**
**A.  Procurement and Acquisition Records**
Contracts, purchase orders, or interagency transfer agreements for the acquisition
of any 2 directed-energy, pulsed radiofrequency, or pulsed electromagnetic device
by HSI in 2024. Budget authorizations or Military Interdepartmental Purchase
Requests (MIPRs) from the Department of Defense to HSI or ICE funding this
acquisition. Records identifying the vendor or contractor, country of origin of the
device or its components, and total acquisition cost.

**B.  Testing and Evaluation Records**
Test plans, protocols, or evaluation reports prepared by HSI, ICE, DHS, or any
contractor regarding the device's capabilities, safety profile, or operational utility.

13

Scientific or medical assessments, safety analyses, or occupational health reviews prepared in connection with the device.

**C. Anomalous Health Incident (AHI / Havana Syndrome) Nexus Records**
Internal analyses, memoranda, or working papers addressing whether this device could cause, replicate, or contribute to symptoms associated with AHIs. Correspondence between HSI and any federal agency — including but not limited to CIA, FBI, NSA, DoD, or the Havana Act Coordinator's office — concerning this device's relevance to AHI investigations.

**D. Congressional Notification Records**
Non-classified briefing materials, talking points, read-aheads, or summaries prepared for or provided to the House Permanent Select Committee on Intelligence or the Senate Select Committee on Intelligence concerning this device, its acquisition, or its testing.

**E. Senior Leadership Communications**
Non-classified emails, memoranda, or electronic messages between HSI senior leadership (GS15 and above, or SES) and the Office of the Secretary of Defense or the Under Secretary of Defense for Intelligence regarding the acquisition, purpose, or testing of this device.

22.     Defendant's online FOIA portal at www.securerelease.us indicated that Plaintiff's request was received on the day it was submitted and assigned it Request Number 2026-ICFO-18735.  Plaintiff did not receive an acknowledgment letter and has had no further communication from ICE regarding the request.

23.     As of the date of this Complaint, Defendants have failed to: (i) determine whether to comply with the requests; (ii) notify Plaintiff of any such determinations or the reasons therefor; (iii) advise Plaintiff of the right to appeal any adverse determinations; or (iv) produce the requested records or otherwise demonstrate that the requested records are exempt from production.

## COUNT I

### (Violation of FOIA, 5 U.S.C. § 552)

24.     Plaintiff realleges paragraphs 1 through 23 as if fully stated herein.

14

25.    Defendants are in violation of FOIA.

26.    Plaintiff is being irreparably harmed by Defendants' violation of FOIA, and Plaintiff will continue to be irreparably harmed unless Defendants are compelled to comply with the law.

27.    Plaintiff has no adequate remedy at law.

28.    To trigger FOIA's administrative exhaustion requirement, Defendant DOJ was required to issue a final determination on Plaintiff's request to the FBI by March 27, 2026, Defendant CIA was required to issue a final determination on Plaintiff's request by March 27, 2026, Defendant DOD was required to issue a final determination to Plaintiff's request to the DIA by April 10, 2026, Defendant ODNI was required to issue a final determination on Plaintiff's request by March 27, 2026, and Defendant DHS was required to issue a final determination on Plaintiff's request to ICE by March 26, 2026, at the latest.  Because Defendants failed to issue final determinations within the time limits set by FOIA, Plaintiff is deemed to have exhausted its administrative remedies.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) order Defendants to conduct a search for any and all records responsive to Plaintiff's FOIA requests and demonstrate that they employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA requests; (2) order Defendants to produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA requests and *Vaughn* indices of any responsive records withheld under claim of exemption; (3) enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA requests; (4) grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action

pursuant to  5 U.S.C. § 552(a)(4)(E); and (5) grant Plaintiff such other relief as the Court deems just and proper.

Dated:  May 19, 2026                                    Respectfully submitted,

*/s/ Meredith L. Di Liberto*
Meredith L. Di Liberto
D.C. Bar No. 487733
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Tel: (202) 646-5172
Email: mdiliberto@judicialwatch.org

*Counsel for Plaintiff*

16